■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM JONES, Also Known as WILLIAM TRIPP, Appellant, v. LEON J. VINCENT, Superintendent of Green Haven Correctional Facility, Respondent.— In a habeas corpus proceeding relator appeals from a judgment of the Supreme Court, Dutchess County, dated October 5, 1973, which dismissed his writ of habeas corpus. Judgment modified, on the law, by granting relator jail time credit for the period during which he was incarcerated on a charge of assault, which was later dismissed. As so modified, judgment affirmed, without costs. On October 22, 1969 relator was convicted of the crime of robbery in the first degree and sentenced to an indeterminate period of incarceration, not to exceed seven years. On October 26, 1971 he was released on parole. On May 5, 1972 he was arrested for possession of a gun and on May 15, 1972 the Parole Board lodged a detainer warrant against him because of such arrest. In September, 1972 relator pleaded guilty to the gun charge and was committed to the custody of the then Narcotic Addiction Control Commission (NACC), now Drug Abuse Control Commission (DACC), for a period not to exceed five years. On November 27, 1972 he was released to a methadone maintenance clinic. Through a procedural oversight, DACC allegedly failed to notify the Parole Board of relator's transfer to the methadone facility. While out of custody, relator assaulted his girl friend and was arrested on her complaint. After being detained for three or four weeks, the charges were dismissed and he was placed in the custody of DACC, pursuant to a detainer warrant which had been filed by it. Relator was again released from DACC and on March 31, 1973 he was declared delinquent for absconding from its supervision. He was picked up and placed in the Woodbourne Center where he received in-patient treatment for drug addiction. His release date from the facility, at which time he was to commence after-care treatment, was scheduled for July 13, 1973. However, relator could not be released because of the parole detainer warrant lodged against him on May 15, 1972 by the Parole Board. On July 30, 1973 the Parole Board executed the warrant and transferred him to the Green Haven Correctional Facility to serve the balance of his 1969 sentence. Upon completion of the sentence, he would be placed in an after-care program for continued therapy. Thereafter, on July 14, 1973, relator petitioned for a writ of habeas corpus in which he argued that the return to prison was an unlawful interference with the DACC sentence; and that he should receive credit from November 27, 1972, when he was originally

released for after-care treatment, to July 30, 1973, when he was taken into custody by the Parole Board and returned to prison. On July 31, 1973, the writ was issued and after a hearing held on October 5, 1973, the writ was dismissed. Relator's argument, that his discharge from DACC and subsequent transfer to the Green Haven Correctional Facility was an unlawful interruption of his DACC commitment, is without merit. Relator could lawfully be placed in the custody of the Parole Board and the Department of Correction to serve the balance of the 1969 sentence only after physical custody of the relator was lawfully relinquished by DACC (*People* v. *Taylor,* 30 N Y 2d 899; *People* v. *Rios,* 37 A D 2d 734; *People ex rel. Pettaway* v. *Zelker,* 70 Misc 2d 997; *People ex rel. Sanchez* v. *Zelker,* 70 Misc 2d 1008). Here DACC released relator from its in-patient program on July 30, 1973. Thus, his period of confinement with DACC was terminated. At that point he was transferred to Green Haven to complete his 1969 sentence. Since his release from DACC's physical custody was authorized (Mental Hygiene Law, § 81.01, subd. [c]), there was no unlawful interruption of that sentence, even though he immediately began serving a different sentence (see *People ex rel. Turner* v. *Vincent,* 44 A D 2d 170). Relator's next argument that he is entitled to jail time credit for the period he was with DACC against the remaining portion of his robbery sentence also must be rejected. The very issue was decided against the relator in *People ex rel. Pettaway* v. *Zelker* (*supra*). A sentence to DACC is not indeterminate (Mental Hygiene Law, § 81.21; Penal Law, § 60.03). The sentence imposed in 1969 for robbery in the first degree was for an indeterminate period not to exceed seven years. Therefore, the sentences did not run concurrently and relator could not get jail time credit for time spent with DACC which is not a Correction Department facility (see *People ex rel. Petite* v. *Follette,* 24 N Y 2d 60; Penal Law, § 70.40, subd. 3, par. [a]). However, there is merit to relator's contention that he should receive credit for the time served in jail, while he was on parole, for the assault charge which was dismissed. Under section 70.40 (subd. 3, par [c]) of the Penal Law, which provides as follows: " (c) Any time spent by a person in custody from the time of delinquency to the time service of the sentence resumes shall be credited against the term or maximum term of the interrupted sentence, provided: * * * (ii) that such custody arose from an arrest on another charge, which culminated in a dismissal " it is clear that the relator should receive credit for the time spent in jail. Relator also argues that the Parole Board lost its authority to retake him because it failed to act expeditiously. This argument has no merit. First, respondent asserts in its brief that DACC failed to apprise the Parole Board of relator's initial transfer, on November 27, 1972, to a methadone maintenance clinic. This statement has gone unchallenged. Second, once the board was notified by DACC, on July 18, 1973, of relator's release to after-care, it had him in its custody within 12 days. Thus, the board acted immediately after being informed of relator's release to after-care when the relator still had over three years left to serve on his parole violation. Clearly, the Parole Board acted promptly and there is no basis upon which the detainer warrant should be challenged. Relator's final argument is that he is entitled to a parole revocation hearing (*Morrissey* v. *Brewer,* 408 U. S. 471). The quick answer is that relator was declared delinquent prior to *Morrissey,* consequently he was not entitled to such hearing (see *People ex rel. Calloway* v. *Skinner,* 33 N Y 2d 23). Further, relator's conviction on his plea of guilty of the gun charge was ample support, without more, for the parole revocation (*People ex rel. Maggio* v. *Casscles,* 28 N Y 2d 415; *People ex rel. Kendrick* v. *Flood,* 43 A D 2d 964).

Hopkins, Acting P. J., Martuscello, Latham, Benjamin and Munder, JJ., concur.